# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGIL PAUL DICKSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of the Social )<br>Security Administration,[1] )<br>)<br>Defendant. ) | Case No. CIV-16-270-SPS |

## OPINION AND ORDER

The claimant Virgil Paul Dickson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born on March 1, 1978, and was thirty-seven years old at the time of the administrative hearing (Tr. 171). He has a high school equivalent education, and has worked as a vending machine attendant, store laborer, backhoe operator, cook, and cashier (Tr. 24, 43-44, 62-63). The claimant alleges that he has been unable to work since April 5, 2012, due to obesity, asthma, depression, anxiety, memory loss, and problems with his legs, back, shoulder, and neck (Tr. 190).

## Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on December 3, 2013 (Tr. 171-74). His application was denied. ALJ James Bentley held an administrative hearing, and determined that the claimant was not disabled in a written opinion dated September 9, 2015 (Tr. 14-26). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work as

defined in 20 CFR § 404.1567(b) with frequent, but not constant, handling and fingering bilaterally; occasional climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; and never climbing ropes or scaffolds (Tr. 19). Additionally, the ALJ found the claimant must avoid concentrated exposure to dust, fumes, odors, and poorly ventilated areas; and have the ability to change position every twenty minutes without leaving the workstation so as not to diminish pace or production (Tr. 19). The ALJ further imposed the psychologically-based limitations of performing simple tasks with routine supervision, and occasional contact with co-workers, supervisors, and the general public (Tr. 19-20). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform in the national economy, *e. g.*, inspector packer, product assembler, and electrical accessory assembler (Tr. 24-25).

**Review**

The claimant contends that: (i) the medical opinion evidence submitted to the Appeals Council undermines the ALJ's decision, and (ii) the Appeals Council failed to properly consider Dr. Gambrill's medical opinion evidence. Because the ALJ's decision is not supported by substantial evidence in light of the evidence submitted to the Appeals Council, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of morbid obesity, mild degenerative changes of the lower thoracic spine, diabetes mellitus, hypothyroidism,

-4-

sleep apnea, hypertension, low back pain, asthma, chronic obstructive pulmonary disease ("COPD"), memory problems, and adjustment disorder (Tr. 28). The medical evidence relevant to this appeal reveals that between August 2010 and May 2015, Dr. Rachel M. Franklin regularly treated the claimant with medication for hypertension, dyslipidemia, asthma, diabetes mellitus, and chronic low back pain (Tr. 342-81, 561-71, 670-734). Her physical examinations of the claimant were generally normal, although an April 2013 treatment note reflects the claimant was shifting in his seat due to back discomfort (Tr. 726). Additionally, the claimant presented to the McAlester Regional Health Center Emergency Room for back pain on several occasions in 2010 and 2011 (Tr. 435-45, 500-06, 519-22, 525-30). A CT scan of the claimant's thoracic spine conducted on May 12, 2011, revealed mild degenerative changes, and CT scans of his cervical spine and lumbar spine taken the same day were normal (Tr. 414-15).

As to his mental impairments, the claimant first reported having trouble with his memory on July 11, 2012 (Tr. 342-46). On August 12, 2012, counselor Ivora Sensibaugh conducted a psychosocial evaluation of the claimant (Tr. 597-613). Ms. Sensibaugh observed that the claimant was oriented and had a tearful affect, depressed mood, and loose process (Tr. 612). She diagnosed the claimant with depressive disorder not otherwise specified, assessed a Global Assessment of Functioning ("GAF") score of forty-five, and opined that the claimant's history of head injury could be a factor in his current behavior and functioning (Tr. 612-13). Providers at OU Physicians Family Medicine regularly prescribed psychotropic medication between January 2014 and May

2015 (Tr. 385-402, 678-711). On January 30, 2015, the claimant presented to Dr. Carol Gambrill for depression and anger issues, reporting that his psychotropic medication was helpful, but less effective (Tr. 742). Dr. Gambrill noted the claimant's mood and affect were within normal limits and diagnosed him with depression (Tr. 742). On March 27, 2015, the claimant reported "lots of anxiety," but improved depression (Tr. 740). Dr. Gambrill noted the claimant's mood and affect were within normal limits and diagnosed him with anxiety (Tr. 741).

Dr. Kathleen Ward conducted a consultative mental status examination of the claimant on February 6, 2014 (Tr. 404-08). She noted the claimant's mood appeared slightly dysthymic, but that he self-described his mood as relaxed, and rated it as an eight on a ten-point scale, with ten being the best (Tr. 405-06). Dr. Ward indicated that the claimant had logical and organized thought processes, no bizarre thought content, and no perceptual abnormalities; was oriented to time, date, and place; and that his cognitive test score suggested normal cognitive functioning (Tr. 406). She diagnosed the claimant with adjustment disorder with depressed mood (Tr. 406).

At the administrative hearing, the claimant testified that he was involved in a motor vehicle-pedestrian accident as a child which resulted in injuries to his neck, jaw, collarbone, and legs, and caused migraine headaches once or twice a month ever since (Tr. 55-59). He further testified that the pain in his back and legs was the most significant limitation that prevented him from working (Tr. 50). The claimant stated that he suffers from depression, which makes him "sad" and causes him to lose interest in the

things he enjoys (Tr. 51). He also stated that he gets anxious in closed rooms and in crowded spaces, and feels as though he is suffocating (Tr. 51, 55). As to specific limitations, the claimant testified that he could sit for forty-five minutes before needing to stand, stand for thirty minutes before needing to sit, walk less than block, and lift about twenty pounds (Tr. 60).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as most of the medical evidence contained in the record before him (Tr. 20-24). In discussing the opinion evidence, the ALJ gave Dr. Ward's consultative opinion great weight, noting that she did not opine as to the claimant's ability to work, but that her unremarkable examination was consistent with the ability to perform simple tasks with routine supervision (Tr. 23). Additionally, the ALJ gave great weight to the state agency physicians' opinion that the claimant could perform light work, but added postural and environmental limitations due to the claimant's sleep apnea, mild degenerative disc disease, asthma, COPD, and hypertension (Tr. 23). The ALJ gave the state agency psychologists' opinion some weight, but due to the claimant's mood deficits and the possibility that the head injuries he sustained as a child could be a factor in his functioning and behavior, he found that the claimant's affective disorder was severe, and then limited him to simple, routine tasks with only occasional social contact (Tr. 23).

Following the issuance of the ALJ's written opinion, additional evidence was submitted to the Appeals Council. Included in that submission was a Medical Source Statement ("MSS") from Dr. Gambrill dated October 30, 2015, wherein she opined that

the claimant would be absent from work about three or more days per month due to back pain, bilateral leg pain and weakness, neck pain, and memory loss (Tr. 769). Additionally, Dr. Gambrill opined that the claimant's pain was intractable and virtually incapacitating to him; that physical work activities would increase his pain to such an extent that rest and/or medication would be necessary; that pain would impair his mental work activities to such a degree that he would inadequately function in such tasks or abandon them; and that his prescribed medication would render him unable to function at a productive work level (Tr. 770). As to psychological limitations, Dr. Gambrill opined that the claimant could not understand, remember, or carry out simple instructions; make simple work-related decisions; respond appropriately to supervision, co-workers, and work situations; deal with changes in a routine work setting; maintain concentration and attention for extended periods; handle normal work stress; or attend employment on a sustained basis (Tr. 771-72). Regarding the claimant's exertional and postural limitations, Dr. Gambrill opined that the claimant could walk less than one block without rest or severe pain; sit for thirty minutes at a time; stand for fifteen minutes at a time; sit/stand/walk for less than two hours total; would take unscheduled breaks every thirty minutes for one hour; needed to elevate his legs up to waist level twenty-five percent of the day; and could never lift/carry more than ten pounds, look down, twist, stoop, crouch/squat, or climb ladders and stairs (Tr. 774-76). As objective support for her opinions, Dr. Gambrill referred to the claimant's score of eighteen on the Montreal Cognitive Assessment, noting that a normal score was greater than or equal to twenty-six

(Tr. 772). Dr. Gambrill concluded her assessment by indicating that her description of the claimant's limitations had been applicable since he was eight years old (Tr. 777).

The claimant's contention regarding his impairments and their effect on his ability to work is bolstered by the evidence contained in the record but submitted after the ALJ issued his opinion. The Appeals Council was required to consider such additional evidence if it is: (i) new, (ii) material, and (iii) "relate[d] to the period on or before the date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council *did* consider this evidence (Tr. 5), and the undersigned Magistrate Judge has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The additional records submitted to the Appeals Council were clearly new evidence. Dr. Gambrill's MSS was never presented to the ALJ prior to his decision, nor did she opine as to the claimant's limitations in the treatment records the ALJ did review, thus her MSS is neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Threet*, 353 F.3d at 1191. *See also Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). In this regard, Dr. Gambrill's MSS indicated that the

claimant was not capable of performing unskilled or sedentary work due to his memory impairment, back pain, leg pain and weakness, diabetes, anxiety, and depression (Tr. 769-77). This evidence suggests the claimant has impairments discounted or completely unaccounted for in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315, 1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Dr. Gambrill supported her opinion by referencing, *inter alia*, the claimant's diagnoses of anxiety and depression, which she first made in January and March 2015, as well as his back pain, which Dr. Franklin treated as recently as May 2015, thus her MSS is chronologically relevant to the ALJ's decision. Therefore, the evidence presented by the claimant after the ALJ's decision *does* qualify as new and material evidence under § 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

In denying the claimant's request for review, the Appeals Council rejected Dr. Gambrill's opinion by finding that the new evidence did not provide a basis for changing the ALJ's decision (Tr. 1-5). The Commissioner correctly states that the Appeals Council is not required to make factual findings about a newly submitted treating physician opinion when it denies review. *See Vallejo v. Berryhill,* 849 F.3d 951, 955-56

(10th Cir. 2017). Nonetheless, the ALJ's decision must be supported by substantial evidence *including* any newly submitted evidence. *Id.* at 956, *citing O'Dell,* 44 F.3d at 858-59. Here, Dr. Gambrill's opinion calls into question the claimant's ability to perform sedentary work, which is in direct conflict with the ALJ's determination that the claimant could perform a limited range of light work. Although not raised by the claimant, the Court additionally notes that the opinion evidence from Dr. Franklin, Dr. Farrow, and a State of Oklahoma Department of Rehabilitation Services physician, which was also included in the submission to the Appeals Council, likewise conflicts with the claimant's RFC (Tr. 766-77, 797, 806-12). In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence. On remand, the ALJ should re-assess the claimant's RFC in light of *all* the new evidence, and then re-determine the work he can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 15th day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**